Filed 5/6/14  Ward v. Goss-Jewett Co. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN T. WARD et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>GOSS-JEWETT CO. OF NORTHERN CALIFORNIA,<br><br>    Defendant and Appellant. | A139306<br><br>(Alameda County<br>Super. Ct. No. RG12626502) |

The trial court denied defendant's motion for relief from default and default judgment, rejecting defendant's claim that its failure to file a responsive pleading was due to surprise and excusable neglect. (Code of Civ. Proc., § 473, subd. (b).[1] Defendant appeals upon contentions that the default judgment is void for failure to provide sufficient notice of plaintiff's statement of damages and a request for entry of judgment. Defendant also contends the court abused its discretion in denying relief. As a final claim, defendant asserts that the judgment, if upheld, must be modified to conform to the amount of damages specified in the statement of damages. We shall affirm the judgment and order denying relief but modify the judgment to reduce the damages award to the amounts specified in the statement of damages.

---

[1] All statutory references are to the Code of Civil Procedure.

1

**Statement of Facts**

On April 17, 2012, Patricia Ward filed a complaint against multiple corporate defendants alleging she suffered from mesothelioma as a result of work-related exposure to asbestos-containing products they manufactured or distributed. Ward had worked in a laundry where pads "associated with the ironing boards and presses were made from asbestos." Among the named defendants was Goss-Jewett Co. of Northern California (Goss-Jewett or the company).

Goss-Jewett sold laundry products to the dry cleaning industry. Goss-Jewett ceased operations in 2000 and has no assets, with the possible exception of liability insurance. The company "never formally wound-down because it could not and still cannot afford to do so." Goss-Jewett's corporate status is listed as "active" with the California Secretary of State and its agent for service of process is Stephen Lamanet. Lamanet is the son of the original owner of Goss-Jewett and currently owns 51 percent of the company.

On May 24, 2012, the complaint and summons were personally served upon Lamanet as Goss-Jewett's agent. Lamanet sent the documents to an attorney, Randall C. Creech, of Creech, Liebow & Kraus of San Jose. Creech did not file a responsive pleading. Creech spoke with one of Ward's attorneys about a possible dismissal and, on July 10, 2012, wrote a letter under the subject line "Our Client: Goss-Jewett Company of North America." Creech asked Ward's attorney to "consider the possibility of dismissing Goss-Jewett . . . from this matter as we discussed." Creech explained that the company "has no assets" and said he was "not aware of any existing insurance policies that would provide coverage for asbestos related claims such as those being advanced by your client." Creech said he "first became involved with the company" around 2003 and had "been representing the company on a pro bono basis for some time" because the company is insolvent. Creech offered to provide Ward's attorney "any additional information" that might assist him in reaching the conclusion that Goss-Jewett should be dismissed from the case.

Creech was added to the service list in the case. Ward's attorney declares that, from August 2012 onward, both Creech and Lamanet were served with all pleadings and notices. In addition to mailed notice for some documents, Creech was on the electronic service list.[2]

On August 3, 2012, Ward's attorney spoke with Creech on the telephone and wrote an email confirming that Creech agreed to provide information that "may help determine whether there is any potential insurance coverage." "We have agreed that plaintiff's counsel will not take the default of your client at present, and will attempt to work cooperatively with you and your client to see whether coverage may exist. In the unlikely event that it appears necessary to take the default of your client, we will provide you with as much notice as possible to allow your client to file a responsive pleading prior to the entry of a default."

Ward's attorney wrote emails to Creech several times in August 2012 asking for insurance information. On August 9, 2012, the attorney noted that Ward's deposition was beginning that day and asked Creech to forward the materials "at your earliest convenience." Creech responded that he was out of town and was "trying to get a staff person to do it." Ward's attorney wrote Creech again on August 16, 2012, saying "I have not seen anything yet. We have a [case management conference] coming up on September 14, 2012 where we will be asking for a trial date in the Ward case. I really need anything you have for Goss Jewett please." Creech did not produce anything.

On August 23, 2012, Ward's attorney again requested insurance information, noting that "discovery is now moving forward at a rapid rate following the completion of Ms. Ward's deposition. Ms. Ward testified that Goss-Jewett regularly sold products to her family's laundry in Sausalito, that her father was a salesman for Goss-Jewett, and that

---

[2] Ward's attorney declares: "With electronic service, each attorney on the service list receives an e-mail notification when a new document or pleading has been uploaded to LexisNexis for service. Thus, from the time he was added to the counsel list, Mr. Creech received virtually instantaneous notice of every document and pleading served in this case. He also had the ability to quickly and easily view and/or download each such document."

her family's laundry was one of her father's customer's." Ward's attorney stated: "I don't want to be unreasonable, but I need to have the information necessary to be able to evaluate your client's potential available insurance coverage. If we don't receive the documents or make other suitable arrangements, I am going to need to take the default of your client. Obviously, given our prior positive discussions, I would prefer not to have to take that course. I will hold off on filing the request for entry of default until next Friday, August 31, 2012. [¶] Can you please get back to me by close of business tomorrow to let me know where things stand?"

Creech did not respond. On September 7, 2012, Ward's attorney left a voicemail message for Creech requesting a response to his inquiries and, on September 10, 2012, faxed a letter to Creech asking Goss-Jewett to "provide the materials promised earlier, or alternatively, file its answer in this case no later than this coming Wednesday, September 12, 2012." Ward's attorney noted that he had not filed a request for entry of default on August 31, as earlier warned, as a "courtesy" but would do so if insurance documents were not produced or "suitable arrangements" made by September 12. The attorney said "I would prefer to work in an amicable manner [but] we have to take the steps necessary to protect our client."

On the afternoon of September 10, 2012, Creech responded by emailing a two-page list of insurance policy numbers and dates of coverage. The list was a copy of responses to form interrogatories in an unspecified prior case. In his email, Creech apologized for the delay saying he "had to receive the document from storage." Ward's attorney wrote an email acknowledging receipt of the list, saying "I will not be taking a default for your client." Ward's attorney later spoke with Creech about the list. Creech said he "had tendered the lawsuit to at least one insurance carrier and that his tender had been rejected based on asbestos exclusions in the policies."

In late September 2012, Ward learned that her mesothelioma had spread to multiple locations in her brain and that she was not expected to live beyond three months. Ward's attorneys sought, and obtained, trial preference with trial set for January 2013.

Creech was served with the motion papers detailing Ward's condition and the order setting trial.

In October 2012, Ward's attorneys mailed to Creech an offer to compromise the case for $500,000. (§ 998.) Creech did not respond to the offer and did not speak with Ward's attorneys again until November 10, 2012. On that date, Creech said "he was going to re-tender the complaint in this case to Goss-Jewett's insurance carriers." Two days later, Creech and Ward's attorney had an email exchange in which Creech identified manufacturers of press pads distributed by Goss-Jewett.

On November 29, 2012, Ward's attorneys filed a mandatory settlement conference statement listing eight defendants that remained in the case and reporting that counsel for defendant Goss-Jewett "has stated that there is no insurance coverage available to cover the claims that are the subject of Ms. Ward's complaint. Discussions are continuing on an informal basis aimed at attempting to find coverage for Ms. Ward's claims. Plaintiff has not taken the default of Goss-Jewett." The document was served on Creech. About a week later, Creech was also served with an economic impact report prepared by an economist stating that Ward's economic loss, exclusive of medical expenses, could be as high as $2.3 million.

On December 10, 2012, Ward's attorney sent an email to Creech telling him that trial was set for January 10, 2013, offering to settle, and warning of default. The email states: "Your client was properly served with the summons and complaint and has not appeared. As a courtesy to you and your client, our office has refrained from taking your client's default while you were attempting to locate insurance coverage. The last time you and I spoke you were going to resubmit this claim to the insurers of Goss-Jewett. I have not heard back from you since our last call. [¶] . . . [¶] We are willing to settle this case with your client for $300,000.00. This offer is open only through 12:00 noon this coming Friday, December 14, 2012. . . . If the offer is not accepted . . . we will have no choice but to take the default of your client."

Ward's attorneys made settlement demands upon the other defendants at the same time, with the same deadline. Ward's attorney declares that he made the settlement

5

demands believing the case would go to trial against one of the defendants and thought he "would either have to take the default of any served but non-appearing defendants or dismiss them." He further declares that he believed Goss-Jewett both culpable and insured for the loss and thus able to settle the case.

Creech did not respond to the settlement demand. Ward's attorney telephoned Creech's office after the December 14, 2012 deadline to notify Creech that a default would be requested. Creech did not return the call.

On December 20, 2012, Goss-Jewett's agent, Lamanet, was personally served with a statement of damages. (§ 425.11.) Creech received electronic service. The statement lists general and special damages totaling $8.5 million.

On December 28, 2012, Ward filed a request for entry of default and served it by mail upon Lamanet and Creech. Creech also received electronic service. The initial request was rejected by the court because the proof of service on both the request and the summons listed the party's name as Goss Jewett instead of Goss-Jewett, omitting the hyphen from the corporate name as it appears in the complaint. A second request was filed on January 4, 2013 but also rejected by the court. A third request was filed on January 15, 2013, with the corporate name corrected on the proofs of service. The third request was accepted for filing but the clerk did not enter default at that time. Only the initial request for entry of default was served; the later requests were not served on the dates they were filed.

Default was entered by the court on January 18, 2013, at the default judgment prove-up hearing. Notice of the hearing had been sent to both Lamanet and Creech but Goss-Jewett made no appearance at the hearing. In advance of the hearing, Ward filed a brief in support of entry of default in the amount of $8.6 million. Ward also filed an attorney declaration and hundreds of pages of exhibits as evidence of damages and Goss-Jewett's liability.

At the hearing, the court questioned Ward's attorney under oath to ensure that Goss-Jewett was properly served and asked if there had been any communication with the company. Ward's attorney said he had conversations with the company's counsel:

6

"We exchanged information. We granted every courtesy in terms of not entering default earlier. [¶] We were trying to work to identify insurance, and at some point, the communication ceased for whatever reasons." The court said it reviewed Ward's videotaped deposition and asked questions about the basis for liability and the calculation of damages. At the conclusion of the hearing, the court found in favor of Ward on liability and took under submission the amount of damages. Four days later, the court entered judgment in favor of Ward in the amount of $5.4 million.[3] On January 24, 2013, Ward mailed notice of entry of judgment to Lamanet and Creech.

Meanwhile, the remaining defendants settled and no trial was held. Ward died on March 7, 2013. The court appointed her brothers, John T. Ward and Pierce J.E. Ward as successors in interest.[4]

The court ordered Goss-Jewett to provide a representative to appear for a judgment debtor examination and, on April 5, 2013, Lamanet appeared on behalf of the company. Lamanet produced documents that had been requested, including insurance policies. In mid-April 2013, plaintiffs' attorneys wrote letters to several of Goss-Jewett's insurers demanding payment of the judgment. Goss-Jewett's insurers retained counsel and, on April 22, 2013, telephoned plaintiffs' attorney to ask him to voluntarily set aside the default and default judgment. Plaintiffs declined to do so but agreed to a shortened notice period for Goss-Jewett to bring a motion for relief.

On June 7, 2013, Goss-Jewett filed a motion to set aside entry of default and default judgment on grounds of surprise and excusable neglect. (§ 473, subd. (b).) Alternatively, Goss-Jewett requested relief "under the court's inherent authority to grant equitable relief." Goss-Jewett's insurers did not seek to intervene in the case.

Goss-Jewett argued that "Creech reasonably relied upon the representations of plaintiff's counsel that default was 'unlikely' and that, in the event default was to be

---

[3] The exact amount of damages is $5,388,650.87: $2 million for pain and suffering, $2 million for emotional distress, $888,174 for loss of earnings, $400,476.87 for past medical expenses and $100,000 for future medical expenses.

[4] Patricia Ward alone is referred to as Ward. We refer to her brothers as plaintiffs.

taken, sufficient notice would be given . . . . " Goss-Jewett claimed the statement of damages was not served in a timely fashion and that the company was "blindsided" by Ward's request for entry of default on December 28, 2012, little more than two weeks after warning the company that its default would be taken if the case was not resolved.

Plaintiffs opposed the motion, arguing that service of the statement of damages was proper and that Goss-Jewett had "ample time to file a responsive pleading and avoid entry of default." Plaintiffs claimed Goss-Jewett was dilatory in moving to set aside a default entered over five months earlier. Plaintiffs also asserted severe prejudice were the motion granted because Ward's estate would lose $4 million in pain, suffering and emotional distress damages recoverable only during her lifetime whereas Goss-Jewett, a defunct corporation without assets, "has made no credible showing of prejudice."

The trial court denied Goss-Jewett's motion on July 5, 2013, following a hearing. The court found the evidence failed to show excusable neglect, surprise or other grounds for equitable relief. The court noted that Goss-Jewett's attorney was informed on December 10, 2012, that the company's default would be taken yet failed to act, resulting in entry of default over a month later on January 18, 2013. The court observed that the attorney "does not explain why the December 10, 2012 email, in which plaintiffs' counsel explicitly warns that the default will be taken, did not prompt him to file responsive pleadings on behalf of defendant." The court also found that service of the statement of damages on December 20, 2012 gave Goss-Jewett "the requisite actual notice of its maximum potential liability for general and special damages and provided it a reasonable period of time within which to respond." The court concluded that the company had not been diligent in seeking relief from the default and failed to include a proposed responsive pleading among its motion papers.

Notice of the order denying Goss-Jewett's motion to set aside the default and default judgment was served on July 10, 2013. Goss-Jewett timely filed a notice of appeal.

8

**Discussion**

1. *The judgment is not void for failure to give Goss-Jewett 30 days to respond to the statement of damages.*

Goss-Jewett contends the default judgment is void because the company was not afforded 30 days to respond to the statement of damages. The statement of damages was served on December 20, 2012, and Goss-Jewett's default was taken on January 18, 2013, 29 days later. The trial court ruled that a defendant is entitled to a reasonable period of time — not a fixed 30-day period of time — in which to respond to a statement of damages and that this standard was met here. We agree.

It is well-established that a default judgment may not "be entered against defendants without proper notice to them of the amount of damages sought." (*Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 435 (*Schwab*).) Notice is commonly provided by the demand for damages included in the complaint. (*Id.* at p. 431; §§ 425.10, subd. (a)(2), 585, subd. (a).) However, no statement of damages is permitted in a personal injury or wrongful death complaint. (§ 425.10, subd. (b).) This limitation was enacted "to 'protect . . . defendants from adverse publicity resulting from inflated demands.' " (*Schwab, supra,* at p. 431.) Defendants in personal injury and wrongful death cases may request "a statement setting forth the nature and amount of damages being sought." (§ 425.11, subd. (b).) "If no request is made for the statement . . . the plaintiff shall serve the statement on the defendant before a default may be taken." (§ 425.11, subd. (c).)

The statutes "do not specify the amount of time before a default is entered that a statement of damages must be served on the defendant. The governing standard for purposes of due process was stated in [*Schwab, supra,* 53 Cal.3d at page 435], albeit in dictum: 'A defendant is entitled to actual notice of the liability to which he or she may be subjected, a reasonable period of time before default may be entered.' The actual holding in *Schwab* was that the plaintiff's failure to provide actual notice of the amount of damages . . . precluded the plaintiff from taking the defendant's default. " (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 61.) The *Schwab* plaintiff did not serve a statement of damages and thus the *timing* of service was not at issue.

9

The adequacy of the time period between service of the damages statement and entry of default has been an issue in subsequent cases and all have used the reasonableness standard expressed in *Schwab*. (*Matera v. McLeod, supra,* 145 Cal.App.4th at pp. 61-62; *Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1322-1323; *California Novelties, Inc. v. Sokoloff* (1992) 6 Cal.App.4th 936, 944-945.) *Matera* concluded that service of the statement of damages "two days before the entry of default was not a reasonable period of time to apprise the defendants of their substantial potential liability for purposes of due process" and vacated the default. (*Matera, supra,* at p. 62.) In contrast, 15-day or 17-day notice has been found to provide reasonable, and thus sufficient, notice. (*Schwab v. Southern California Gas Co., supra,* at pp. 1322-1323; *California Novelties, Inc., supra,* at pp. 944-945.)

Goss-Jewett says *California Novelties, Inc.*, and presumably other cases applying a reasonableness test, are "perhaps wrongly decided." The company notes the statutory requirement that a statement of damages be served upon a non-appearing defendant "in the same manner as a summons" and argues that, like a summons, a 30-day response period is mandated. The "manner" of service, however, refers only to personal service versus mailed service. (§ 425.11, subd. (d).) "If defendant has not appeared in the action, the [section] 425.11 statement of damages must be served 'in the same manner as a summons' (i.e., personal service). . . . [¶] If defendant *has* appeared, the notice may be served by mail . . . ." (Rylaarsdam et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group) ¶ 5:91.) Section 425.11 "does not state how long before entry of default the damages statement must be served." (*Id.* at ¶ 5:97.)

The legislative history of section 425.11 reinforces the conclusion that the reference in the statute to the "manner of service" is concerned solely with the means by which the statement of damages is conveyed. When section 425.11 was amended to add the subject provision, it was explained that "Existing law requires a plaintiff to submit a separate statement of the nature and amount of damages claimed in a personal injury and wrongful death superior court action. [¶] This bill would specify procedures for the service of that separate statement. If the party has not personally appeared in the action,

10

the statement must be served by personal service. If an appearance has been made, the service may be effected by mail." (Sen. Floor Analysis of Assem. Bill No. 58 (1993-1994 Reg. Sess.) Aug. 19, 1993.) Nothing in the legislative history indicates any intention to require service of the statement of damages 30 days before entry of default.

Goss-Jewett argues that "[m]ultiple courts" have held that the statutory provision for service "in the same manner as a summons" "means that a defendant must be provided 30 days after the service of a statement of damages under section 425.11 to respond." The company cites two cases for this proposition: *Plotitsa v. Superior Court* (1983) 140 Cal.App.3d 755 and *Twine v. Compton Supermarket* (1986) 179 Cal.App.3d 514. In fact, these cases do not interpret the meaning of service "in the same manner as a summons" because they were decided *before* the subject provision was added to section 425.11 in 1993, when there was no provision for the manner of service. (Stats. 1993, ch. 456, § 2.)

Moreover, *Plotitsa* did not concern a statement of damages. (*Plotitsa v. Superior Court, supra,* 140 Cal.App.3d 755.) The plaintiff in *Plotitsa* did not serve a statement of damages but mailed a request for entry of default indicating the total demand of the complaint as $250,000. The court invalidated the default, holding that a defendant who has not appeared in the action must be "personally served with the request to enter default when there has been no prior notice to him that complies with section 425.11 'statement of damages' requirement." (*Id.* at pp. 758-759.) The court further stated, in *dicta*, that a statement of damages is like "an amended complaint seeking increased damages" and, like an amended complaint, should allow defendants 30-days to respond. (*Id.* at p. 761.)

The court in *Twine* invalidated a default taken three days after a statement of damages was mailed to the defendant. (*Twine v. Compton Supermarket, supra,* 179 Cal.App.3d at pp. 517-519.) The lack of personal service was a sufficient basis for invalidating the default but the court also said a plaintiff should "defer entry of default until 30 days from such service so that defendant can file a responsive pleading." (*Id.* at p. 517.) However, *Twine* was concerned with providing sufficient notice under an early version of section 425.11 that had no provision for personal service and predated the

11

California Supreme Court's expression of approval for a reasonable notice standard in *Schwab, supra,* 53 Cal.3d at page 435. *Twine's* mention of a 30-day period has not been adopted by any court in the decades since that decision was rendered. The Second District Court of Appeal, which issued *Twine*, uses a reasonableness standard when interpreting the current version of section 425.11. (*Matera v. McLeod, supra,* 145 Cal.App.4th at pp. 61-62.) We shall do the same.

Goss-Jewett argues that, even if reasonable notice is the test, the amount of notice here was unreasonable. The trial court found to the contrary, and that finding is supported by substantial evidence. The complaint and summons were personally served upon Goss-Jewett's agent in May 2012, seven months before default was taken. In August 2012, Ward's attorneys promised not to take the company's default "at present" but plainly warned that a default may be taken in the future. Additional warnings were provided over the following months and, in September 2012, Goss Jewett was informed that trial was set for January 2013. On December 10, 2012, Ward's attorneys offered to settle the case and, absent settlement by December 14, 2012, said "we will have no choice but to take the default" of Goss-Jewett. Ward served a statement of damages on December 20, 2012, and first requested entry of default on December 28, 2012. Default was entered on January 18, 2013.

Goss-Jewett observes that "[a] mere eight days elapsed between Ward's service of the statement of damages . . . and the filing of the request for entry of default." The facts remain, however, that Goss-Jewett had months to file a responsive pleading and was plainly told on December 10 that its default would be taken, which was 18 days before default was sought and over five weeks before default was entered. Critically, there were 29 days between service of the statement of damages and entry of default. The company maintains that the date of entry of default is immaterial because "it would have appeared to an observer that the default had been entered on or about December 28" when it was first requested. We disagree. Goss-Jewett could have ascertained the status of the case by reviewing the court docket and averted default by filing a responsive pleading at any time until default was entered. The record supports the trial court's finding that Goss-Jewett

received actual notice of the liability to which it could be subjected, "a reasonable period of time before default [was] entered." *(Schwab, supra,* 53 Cal.3d at p. 435.)

2. *The judgment is not void for failure to serve the request to enter default with a corrected proof of service.*

Goss-Jewett contends the judgment is void because only the initial request for entry of default was served; Ward's attorneys did not serve the request that was later accepted for filing after correction of the corporate name on the proof of service. As noted earlier, Ward filed a request for entry of default and served it by mail upon Lamanet and Creech on December 28, 2012. The initial request was rejected by the court because the proof of service listed the party's name as Goss Jewett instead of Goss-Jewett, omitting the hyphen. A second request was filed on January 4, 2013, but also rejected by the court. A third request was accepted for filing on January 15, 2013, after the corporate name was corrected on the proof of service. The three filings were identical except for the proof of service — each used the December 28, 2012 request for entry of default and differed only in the addition of a hyphen in the corporate name on the proof of service.

Goss-Jewett contends that Ward was required to serve each of these requests for entry of default and that its failure to do so, especially as regards the "operative" January 15, 2013 request, invalidates the default. We reject the contention.

California law states: "An application by a plaintiff for entry of default . . . shall include an affidavit stating that a copy of the application has been mailed to the defendant's attorney of record or, if none, to the defendant at his or her last known address and the date on which the copy was mailed. . . . [¶] No default . . . shall be entered, unless the affidavit is filed." (§ 587.)

The initial application for default included the required affidavit attesting that a copy of the application had been mailed. It is doubtful that a subsequent identical application with a new proof of service modified only to correct a minor clerical mis-identification of the party served needs to be re-served. In any event, any deficiency in failing to serve a later-filed request with a corrected proof of service does not invalidate

13

the default. "The requirement of an affidavit of mailing under section 587 is not jurisdictional, and hence the failure to file one does not deprive the trial court of jurisdiction to render judgment." (*Rodriguez v. Henard* (2009) 174 Cal.App.4th 529, 536.) Defects in the affidavit of mailing do not invalidate the default and resulting judgment absent a showing of prejudice. (*Ibid.*) There is no prejudice when defendant has actual notice of the default proceedings. (*Ibid.*) Goss-Jewett had actual notice. The initial request for entry of default alerted the company that default was being sought and notice of the default judgment hearing — at which default was entered — gave additional notice.

Goss-Jewett asserts that failure to serve the request for entry of judgment filed on January 15, 2013, with the corrected proof of service, deprived it of a final opportunity to respond. The assertion is without evidentiary support. The declaration of Lamanet filed with the motion for relief from judgment concedes that he received the statement of damages "[o]n or about" December 28, 2012, and knew by January 8, 2013, that there "was a default proceeding against Goss-Jewett." Lamanet says nothing about taking action to respond to the complaint or being deterred from doing so because the initial request for entry of default misled him into thinking default had already been entered. Lamanet says only that he "did not understand what these documents were." Attorney Creech says nothing about the request for entry of default, acknowledging only that he received the December 10, 2012 warning that Goss-Jewett's default would be taken if it did not accept settlement on the terms offered. Creech does not report any intention or effort to respond to the complaint after learning of the impending default. In short, there is no evidence that Goss-Jewett's failure to respond, and the resulting default, was caused by Ward's failure to serve the third request for entry of judgment filed on January 15, 2013, with the corrected proof of service.

3. *The trial court did not abuse its discretion in denying relief.*

Goss-Jewett contends that it acted with due diligence in seeking relief from the default and default judgment and that the trial court abused its discretion in denying relief

given evidence that the default resulted from surprise and excusable neglect. Plaintiffs deny both contentions and, additionally, assert that relief was properly denied because Goss-Jewett failed to attach a proposed answer to its motion for relief.

The last point may be quickly resolved. It is true that a responsive pleading must be filed with an application for relief (§ 473, subd. (b)) but substantial compliance is sufficient. (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 401-403.) Here, Goss-Jewett's application averred that a responsive pleading was attached but the pleading was inadvertently omitted when the motion papers were filed with the court. Goss-Jewett asserts that it was prepared to file the omitted pleading on the day of the hearing. We will assume, for purposes of this appeal, that Goss-Jewett substantially complied with the filing requirements.

We will also assume Goss-Jewett exercised due diligence in seeking relief. The trial court found otherwise, noting that default was entered in January 2013 and relief not sought until June 2013, after almost six months had elapsed. Goss-Jewett contends it moved swiftly to seek relief after its insurers learned of the judgment in April 2013 and provided representation. Plaintiffs do not address the contention with argument or legal authorities. Plaintiffs simply quote the court's finding of a lack of diligence. Absent any substantive factual or legal argument, we will assume that Goss-Jewett acted diligently in seeking relief and turn to the merits of its application. (*Said v. Jegan* (2007) 146 Cal.App.4th 1375, 1384-1385.)

The discretionary relief provision of section 473, subdivision (b) provides: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . ." A trial court's refusal to grant relief under section 473 will not be reversed absent an abuse of discretion. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257.)

Goss-Jewett maintains that the default took it by surprise. " 'Surprise' referred to in section 473 is 'some condition or situation in which a party . . . is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence

15

could not have guarded against.' " (*Credit Managers Assn. v. National Independent Business Alliance* (1984) 162 Cal.App.3d 1166, 1173.) Goss-Jewett contends it was lulled into a sense of security by the August 2012 assurances of Ward's attorneys that default was "unlikely" and that, in the event default was to be taken, "as much notice as possible" would be given to provide Goss-Jewett time to file a responsive pleading. The company argues that "[t]he first mention of a change in position and new desire to proceed to default was in a December 10, 2012 e-mail" that "arose during the holidays and was a complete turn-around from the prior position." Goss-Jewett maintains that this December 10, 2012 notice did not give it sufficient time to avoid entry of default that was first requested on December 28, 2012, and ultimately entered on January 18, 2013.

The trial court did not abuse its discretion in rejecting Goss-Jewett's claim of surprise. In early August 2012, Ward's attorneys agreed not to take the company's default "at present" while insurance coverage was investigated but made it clear that default could be taken in the future upon reasonable notice. The threat of default always hung over the litigation. In late August and early September 2012, Ward's attorneys twice threatened default when insurance information was not provided. Goss-Jewett was also informed that the trial date was fast approaching and that Ward claimed substantial damages. The December 10, 2012 notice was explicit in warning that default would be requested absent an immediate settlement. The request to enter default was not filed until December 28, 2012, and default not entered until January 18, 2013, over a month after Goss-Jewett was notified of Ward's intention to take the company's default. As the trial court observed, Goss-Jewett failed to offer any evidence as to its conduct after receiving notice on December 10, 2012, of the impending default and the default entered over a month later. The record does not substantiate Goss-Jewett's claim of surprise.

Nor does the record substantiate Goss-Jewett's claim of excusable neglect. In determining whether a person's mistake or inadvertence was excusable, " 'the court inquires whether "a reasonably prudent person under the same or similar circumstances" might have made the same error." ' " (*Zamora v. Clayborn Contracting Group, Inc., supra,* 28 Cal.4th at p. 258, italics omitted.) Goss-Jewett contends that Lamanet, its agent

16

for service of process, should be excused because he has disabling psychological conditions and is "a layperson unsophisticated in legal matters." As the trial court rightly noted, however, Lamanet's health condition and legal experience is largely irrelevant because Attorney Creech monitored the litigation on behalf of Goss-Jewett, received service of all filings, and was in contact with Ward's attorneys. On appeal, Goss-Jewett contends that Creech's failure to file a responsive pleading was excusable because he "relied upon Ward's counsel's prior representations that they would not default Goss-Jewett; or, at a minimum, they certainly would not do so without reasonable notice so that Goss-Jewett had an opportunity to evaluate and respond." Creech's declaration, however, only describes his communications with Ward's attorneys and his reliance on early assurances that default would not be taken without notice. Creech provides no explanation of his conduct after December 10, 2012, when Ward's attorneys provided notice of an impending default. The trial court noted this omission in rejecting claims of excusable neglect: Creech "does not explain why the December 10, 2012 email, in which [Ward's] counsel explicitly warns that the default will be taken, did not prompt him to file responsive pleadings on behalf of [Goss-Jewett]." The trial court did not abuse its discretion in denying relief from the default and default judgment.

4. *The judgment must be modified to conform to the statement of damages.*

Goss-Jewett contends the trial court improperly awarded damages in excess of the amounts listed in the statement of damages. The contention has merit.

The relief granted to a plaintiff upon entry of a defendant's default cannot exceed the amount demanded in the complaint or, for personal injury cases where damages may not be stated in the complaint, the amount listed in the statement of damages. (§§ 580, subd. (a), 585, subd. (b).) "The notice requirement of section 580 was designed to insure fundamental fairness." (*Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494.) The statute insures that "defendants in cases which involve a default judgment have adequate notice of the judgments that may be taken against them. [Citation.] 'If a judgment other than that which is demanded is taken against him, [the defendant] has

17

been deprived of his day in court — a right to a hearing on the matter adjudicated.' " (*Id.* at p. 493.) A trial court exceeds its jurisdiction if it awards damages in excess of the amount specified in the complaint or statement of damages. (*Id.* at p. 494.) "[I]n all default judgments the demand sets a ceiling on recovery." (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 824.)

The trial court here awarded the total sum of $5,388,650.87. The award consists of $4 million in general damages for emotional distress, pain and suffering and the remainder in special damages for medical expenses and loss of earnings. The general damages awarded did not exceed the $6 million in general damages listed in the statement of damages and are not in dispute on appeal. At issue are special damages. The statement of damages listed medical expenses to date as $250,000 and future medical expenses as $100,000. Loss of earnings to date was listed as $13,601 and loss of future earning capacity as $757,297. The statement of damages listed additional special damages (social security income and household services) but only medical expenses and loss of earnings were awarded.

The court awarded the following amounts:  past medical expenses $400,476.87; future medical expenses $100,000; and loss of earnings (past and future) $881,174. The amount awarded for past medical expenses ($400,476.87) exceeded the amount listed in the statement of damages ($250,000). Likewise, the amount awarded for all loss of earnings ($888,174) exceeded the amounts listed in the statement of damages for past and future loss of earnings ($770,898 in total).

Plaintiffs contend that medical expenses and loss of earnings were stated "to date" when the statement of damages was served on December 20, 2012, and that the court was free to award increased amounts for additional losses incurred between that time and the default judgment entered a month later, on January 22, 2013. This is not the law. "[D]ue process requires notice of the specific financial exposure facing defaulting defendants." (*Finney v. Gomez* (2003) 111 Cal.App.4th 527, 543.) If a plaintiff's damages increase after a statement of damages is served, she may file a subsequent statement of damages with updated figures before taking defendant's default. A plaintiff may not, however,

18

obtain a default judgment in excess of the operative statement of damages. (§§ 580, subd. (a), 585, subd. (b).)

We conclude that the judgment must be modified to conform to the statement of damages. "Ordinarily when a judgment is vacated on the ground the damages awarded exceeded those pled, the appropriate action is to modify the judgment to the maximum amount warranted by the complaint" or, as here, the statement of damages. (*Ostling v. Loring* (1994) 27 Cal.App.4th 1731, 1743; accord *Becker v. S.P.V. Construction Co.*, *supra*, 27 Cal.3d at p. 495; *Greenup v. Rodman*, *supra*, 42 Cal.3d at p. 830.) The amount awarded for past medical expenses must be reduced from $400,476.87 to $250,000, the amount listed in the statement of damages. Similarly, the amount awarded for loss of earnings must be reduced from $888,174 to $770,898. We note that the statement of damages partitioned past and future loss earnings and that the judgment aggregated the amounts. A judgment that uses the exact same categories as the statement of damages is to be preferred, for clarity, but we are satisfied that the statement of damages listing loss of earnings to date as $13,601 and loss of future earning capacity as $757,297 provided Goss-Jewett sufficient notice to support a judgment for "loss of earnings" equal to the sum of those amounts.

### Disposition

The judgment is modified to award $250,000 in past medical expenses (in place of $400,476.87) and to award $770,898 in past and future loss of earnings (in place of $888,174.) The sum of all damages is thus reduced from $5,388,650.87 to $5,120,898. In all other respects, the order denying relief from the default and default judgment is affirmed. The parties are to bear their own costs on appeal.

_____
Pollak, Acting P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.