Filed 7/21/14 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
FIRST APPELLATE DISTRICT
DIVISION FOUR

| | |
|---|---|
| DEPARTMENT OF FAIR EMPLOYMENT & HOUSING,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>HARVEY OTTOVICH,<br><br>     Defendant and Appellant. | A136607<br><br>(Alameda County<br>Super. Ct. No. RG08368372) |

Good cause lacking, defendant's petition for rehearing is denied. The opinion filed herein on June 30, 2014 is ordered modified as follows. First, on page 10, the following paragraph is added to footnote 7:

In a petition for rehearing, Ottovich argues that under the recently decided case of *Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, it was impermissible for the trial court to grant summary judgment and enter an interlocutory judgment on the issue of liability only, while leaving the amount of damages to be determined later. By failing to raise this issue in either the trial court or his briefs on appeal, Ottovich has waived it. (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486 ["Points not raised in the trial court will not be considered on appeal."]; *Akins v. State of California* (1998) 61 Cal.App.4th 1, 38–39, fn. 34 ["Reviewing courts need not consider points raised for the first time in a petition for rehearing."]) In any case, other procedural mechanisms would have been available to establish Ottovich's liability. Our conclusion that the trial court was not required to reinstate the answer does not rest on the propriety of the mechanism the trial court used, but on the fact that Ottovich was able to protect his interests by appearing in court and contesting the amount of damages.

Second, a case citation on page 8 of the opinion should be revised. On page 8, fourth line from the top, the citation reading "(*Johnson*, *supra*, Cal.App.4th at. p. 621 & fn. 8.)" should be revised to read "(*Johnson*, *supra*, 28 Cal.App.4th at p. 621 & fn. 8.)"

These modifications do not effect a change in the judgment.

1

Filed 6/30/14   (unmodified version)

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DEPARTMENT OF FAIR EMPLOYMENT & HOUSING,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>HARVEY OTTOVICH, Individually and as Trustee, etc.,<br><br>　　　Defendant and Appellant. | A136607<br><br>(Alameda County<br>Super. Ct. No. RG08368372) |

　　　The Department of Fair Employment and Housing (the Department) brought this action against defendant Harvey Ottovich[1] alleging he engaged in housing discrimination. After Ottovich engaged in abusive discovery tactics, the trial court sanctioned him by striking his answer to the complaint and entering a default judgment.  The trial court later vacated the default, but continued to treat the answer as stricken.  Treating the unanswered allegations of the complaint as judicially admitted, the trial court granted summary judgment to the Department on the issue of liability.  A jury then assessed damages at $8,705.  Ottovich has appealed the ensuing judgment.  His primary contention is that the trial court was required to reinstate his answer at the time it vacated the default judgment.  We shall affirm the judgment.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

　　[1] The named defendant is Harvey Ottovich, as an individual, as the trustee of the Harvey G. Ottovich Revocable Living Trust, and as beneficiary of the Harvey G. Ottovich Revocable Living Trust.  We shall refer to defendant as "Ottovich."

1

# I. BACKGROUND

In this action, the Department alleged that Ottovich owned or managed an apartment building in Fremont, California. He posted an advertisement for an apartment available for rent, and real party in interest Diane Coleman[2] called him and expressed interest in the apartment. He asked who would be living in the apartment, and she told him she, her husband, and their young daughter would live there. Defendant responded that he would not rent the apartment to her. Coleman told defendant, "That's discrimination." He replied that he did not have to show her the apartment or rent it to her, and he hung up.

The complaint alleged Ottovich's actions violated Government Code section 19255, under which it is unlawful for the owner of a housing accommodation to discriminate against anyone based on, inter alia, familial status. In its prayer for relief, the Department asked the court to order Ottovich to pay damages to compensate real parties "in an amount to be proven at trial," as well as treble damages pursuant to the Unruh Civil Rights Act (Civ. Code, § 51) "in no case less than four thousand dollars."

The record on appeal does not include the original complaint. Ottovich answered the complaint on September 25, 2008. The Department filed its first amended complaint on November 26, 2008. It appears that Ottovich did not answer the first amended complaint.[3] Instead, Ottovich moved to dismiss the complaint as a Strategic Lawsuit Against Public Participation (SLAPP) pursuant to Code of Civil Procedure[4]

---

[2] The real parties in interest are Diane Coleman, individually and as guardian ad litem for Ronnaia Coleman, and Ronald Coleman.

[3] Ottovich avers in his opening brief on appeal that he assumed his answer to the original complaint would also serve as an answer to the first amended complaint, and that the Department did not alert the court to the omission or seek a default on that basis. The Department acknowledges that the trial court implicitly treated the initial answer as the answer to the first amended complaint as well, and does not suggest this omission has any effect on the outcome of this appeal.

[4] All undesignated statutory references are to the Code of Civil Procedure.

section 425.16. The trial court denied this anti-SLAPP motion, found it was frivolous, and awarded plaintiff $2,500 pursuant to section 425.16, subdivision (c).

The Department propounded discovery requests to Ottovich. In November 2008, the trial court granted the Department's motion to compel responses to form interrogatories and requests for production of documents, awarded sanctions of $375, and advised Ottovich that "failure to comply with this Order or further discovery abuse may result in further sanctions, including monetary, evidentiary, issue, and terminating sanctions." In April 2009, the court granted the Department's motion to compel responses to its request for production of documents, and awarded sanctions of $250.

The Department moved for terminating sanctions in June 2009 on the ground that Ottovich had committed discovery abuses. In support of the motion, the Department submitted evidence that Ottovich had failed to comply with discovery requests, had violated the court's orders compelling discovery, and had been found in contempt for failing to attend a case management conference. The court granted the motion, ordering: "Defendant's Answer filed September 25, 2008 is STRICKEN, and Defendant Harvey Ottovich is DEFAULTED from this action."

The Department filed a Statement of Damages (§ 585) in September 2009, claiming $55,000 in damages for emotional distress, trebled pursuant to the Unruh Act ($165,000 total), $5,588.53 for the costs of hotel stays, restaurant meals, and storage, trebled pursuant to the Unruh Act ($16,765.59 total), and $100,000 in punitive damages. After a default prove-up hearing in October 2009, the trial court awarded total damages of $242,354.12, and ordered judgment entered accordingly.

Ottovich moved to vacate the judgment in December 2010. As he argued, section 425.11 requires a plaintiff in an action for personal injury or wrongful death to serve a statement of damages on a defendant before a default may be taken. (§ 425.11, subd. (c).) Because the Department had failed to do so, he contended, the default judgment was void. The Department did not oppose the motion, and the trial court granted it on January 20, 2011, ruling: "The Court HEREBY VACATES the October 13, 2009 Default

3

Judgment . . . and the portion of the July 23, 2009 Order Entering Default against Defendant pursuant to CCP § 2023.030(d)."

Ottovich did not seek to reinstate his original answer or file an answer to the first amended complaint. In July 2011, the Department moved for summary judgment, arguing that Ottovich's failure to answer the allegations of the complaint acted as a judicial admission of the truth of those allegations. (§ 431.20, subd. (a).) In his opposition to the motion, Ottovich argued in part that when the trial court vacated the default, his answer was reinstated as a matter of law. In the alternative, Ottovich requested leave to file an answer and for a continuance of the hearing on the summary judgment motion. The trial court granted the motion for summary judgment. In doing so, the court stated that in its order setting aside the default, it had "specifically declined to set aside its order striking the Answer of Defendant Ottovich due to the pattern of discovery misuse shown in the Motion for Terminating Sanctions." The court entered an "Interlocutory Judgment Establishing Defendants' Liability Pending Determination of Damages."

Ottovich moved for reconsideration of the order granting summary judgment. He argued that, as a matter of law, his answer to the complaint was reinstated when the default judgment was vacated, and, in the alternative, that his attorney's mistake in believing the answer would be considered reinstated was the result of mistake or excusable neglect. The motion included a declaration of Ottovich's attorney stating that by the time the trial court vacated the default judgment in January 2011, he had forgotten that no answer to the first amended complaint had been filed, that he believed the court's order necessarily reinstated the previously filed answer, and that he would have filed an answer if he had believed it was necessary. The trial court denied the motion for reconsideration, ruling that Ottovich had not shown any new or different facts, circumstances, or law, and—even if such facts existed—had not shown that he could not have brought them to the court's attention before the initial order granting summary judgment in the exercise of reasonable diligence.

4

A jury trial was held on the amount of the real parties' damages.  The jury found the damages totaled $8,705, and judgment was entered accordingly.

## II.  DISCUSSION

### A.  Reinstatement of  Answer

Ottovich contends that when the trial court vacated his default, it also implicitly reinstated his answer.  The order granting terminating sanctions read in its entirety:  "The tentative ruling is affirmed as follows:  Plaintiff's unopposed Motion for Terminating Sanctions is GRANTED, based on Defendant's failure to comply with, inter alia, the Court's Orders entered November 26, 2008 and April 16, 2009.  Defendant's Answer filed September 25, 2008 is STRICKEN, and Defendant Harvey Ottovich is DEFAULTED from this action."  We agree with the trial court that its January 20, 2011 order vacating the default judgment, "and the portion of the July 23, 2009 Order Entering Default against Defendant" by its terms left intact the portion of the earlier order striking Ottovich's answer.

Ottovich argues in the alternative that the trial court erred by failing to reinstate the answer when it vacated the default.  He argues, relying on *Matera v. McLeod* (2006) 145 Cal.App.4th 44 (*Matera*) that vacating the default without reinstating the answer failed to provide meaningful relief.  We conclude *Matera* does not control on the facts presented here.

Section 2023.030 authorizes a court to impose sanctions for misuse of the discovery process.  In addition to authorizing monetary sanctions and issue sanctions (§ 2023.030, subds. (a) & (b)), it provides in part:  "(d) The court may impose a terminating sanction by one of the following orders:  [¶] (1) An order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process.  [¶] . . . [¶]  (4) An order rendering a judgment by default against that party."

It is well settled that a plaintiff may not take a default against a defendant without giving the defendant actual notice of the amount of damages claimed.  (*Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 430.)  In general, this notice is found in the complaint or cross-complaint.  (§ 425.10, subd. (a).)  However, where, as here, an action is brought

to recover damages for personal injury, the amount of damages claimed may not be stated in the complaint.  (§ 425.10, subd. (b).)  Instead, the defendant "may at any time request a statement setting forth the nature and amount of damages being sought.  (§ 425.11, subd. (b).)  If the defendant does not make such a request, "the plaintiff shall serve the statement on the defendant before a default may be taken."  (§ 425.11, subd. (c).)  Thus, "[n]ot only is a default judgment for an amount greater than that specifically demanded void, but when a statement of damages is required but not served, the underlying entry of default is invalid also and is subject to set-aside."  (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1521.)

For purposes of this rule, a default taken after the answer to a complaint is stricken as a discovery sanction is treated the same way as a default taken after the defendant fails to answer the complaint.  (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 824–829 (*Greenup*).)  The question before the court in *Greenup* was "whether a default judgment entered as a discovery sanction is excepted from the general rule that 'if there be no answer' filed, the plaintiff's relief 'cannot exceed that which he shall have demanded in his complaint . . . .'  (Code Civ. Proc., § 580.)"[5]  (*Id*. at p. 824.)  The court concluded: "The rationale . . . that striking the answer renders it a nullity [citation], applies equally when the answer is stricken [as a discovery sanction].  It is true that sections 586, 585, and 580, which together govern default judgments, do not explicitly list answers stricken pursuant to [former] section 2034 as proceedings in which default judgment is rendered 'as if the defendant had failed to answer . . . .'  (§ 586.)  Yet unless and until the Legislature specifically provides a separate procedure for defaults after discovery

---

[5] Section 580 currently provides in pertinent part:  "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by section 425.11, or in the statement provided for by section 425.115 [regarding punitive damages]; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue."  At the time of the *Greenup* opinion, it provided:  "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the Court may grant him any relief consistent with the case made by the complaint and embraced within the issue."  (*Greenup*, *supra*, 42 Cal.3d at p. 824, fn. 1.)

6

sanctions, these sections remain the sole statutory procedures for default judgments. . . . We conclude that the damages awarded must be limited by the terms of the same section: when an answer is stricken as a sanction for the defendant's obstruction of discovery, it is as if no answer had been filed in the first instance." (*Greenup*, *supra*, 42 Cal.3d at p. 828.)

Here, the Department did not file a statement of damages before default judgment was entered; recognizing the impropriety of this procedure, the trial court later vacated the default while leaving intact its order striking Ottovich's answer. The question before us is whether the trial court was required to reinstate the answer as a matter of law.

Ottovich contends this question is governed by *Matera, supra,* 145 Cal.App.4th 44. As a sanction for abusive discovery practices, the trial court there ordered the defendants' answer stricken, entered their defaults, held a prove-up hearing, and entered a default judgment. (*Id*. at pp. 52–53.) On appeal, the defendants argued that the default judgment was void because plaintiffs had failed to provide actual notice of the amount of damages they sought a reasonable time before the entry of defaults. (*Id*. at p. 59.) The plaintiffs did not allege any amount of damages in their complaint, and first served their statement of damages two days before the hearing on the motion for terminating sanctions and entry of default. (*Ibid*.) The Court of Appeal concluded this short notice did not comport with due process, and the default judgment was therefore void. (*Id*. at pp. 60–62.) The *Matera* court went on: "The striking of a defendant's answer as a terminating sanction leads inexorably to the entry of default. [Citations.] To vacate the defaults without reinstating defendants' answer would be an empty gesture. We therefore conclude that the order striking the answer must be vacated and the answer reinstated." (*Id*. at p. 62.)

The Department distinguishes the rule of *Matera*, arguing that, in practice, a default "need not follow immediately upon the heels of the striking of an answer. Rather, as here, the striking of the answer may simply resolve liability issues, while the defendant retains the right to litigate damages." This procedure, the Department argues, was

approved in *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613 (*Johnson*).

In *Johnson*, as a sanction for discovery abuses, the trial court struck the defendant's answer *except as to the issue of damages*. (*Johnson, supra,* Cal.App.4th at. p. 621 & fn. 8.) The court then granted summary adjudication of the defendant's liability on each cause of action, and a jury trial on the issue of damages was held. (*Id*. at pp. 621–622.) The complaint had sought damages "in excess of Twenty-Five Thousand Dollars [] according to proof"; the jury awarded $4.9 million in damages. (*Id*. at pp. 617, 622.) Relying on *Greenup*, the defendant contended that, rather than compelling it to litigate the damages issue, the trial court should have ordered a default prove-up hearing and limited the plaintiffs' recovery to the $25,000 jurisdictional limit pleaded in the complaint. (*Id*. at p. 623.)

The Court of Appeal rejected this contention. It found *Greenup* "inapt" because the trial court there not only struck the answer but also entered a default judgment in an amount exceeding the prayer in the complaint. The Supreme Court granted review " 'to consider whether *a default judgment entered as a discovery sanction* is excepted from the general rule that "if there be no answer" filed, the plaintiff's relief "cannot exceed that . . . demanded in [the] complaint . . . ." ' " (*Johnson*, *supra*, 28 Cal.App.4th at p. 623, citing *Greenup*, *supra*, 42 Cal.3d at p. 824.) The rule of *Greenup*, the *Johnson* court concluded, was limited to cases of default. (*Johnson*, *supra*, 28 Cal.App.4th at pp. 623–624.) The court went on to note that the defendant "was in no different position than any defendant who admits liability, but disputes damages; who answers the allegations concerning damages, but fails to answer the liability allegations; or who has suffered an adverse summary adjudication of the issue of liability. In none of those instances is there a default—or a default prove-up hearing. Here, where there was no entry of default, a default prove-up hearing would have been not only inappropriate, but unauthorized. The court could not have excluded [the defendant] from proceedings to determine plaintiff's damages. It therefore correctly conducted an adversarial jury trial on the only issue remaining, i.e., the extent of plaintiffs' damages." (*Id*. at pp. 624–625.)

The procedural posture of this case lies somewhere between *Johnson* and *Matera*. The trial court's January 20, 2011 order vacating the default left intact the portion of the order striking Ottovich's answer to the complaint (not, as in *Johnson*, only a portion of the answer). But, as in *Johnson*, the court also kept alive the issue of damages, and Ottovich was able to defend that issue fully—so successfully, in fact, that rather than the damages of nearly a quarter of a million dollars originally awarded at the default prove-up hearing, the jury awarded total damages of less than $9,000.[6]

A close reading of *Greenup* suggests this result comports with due process. In arguing that defaults entered as a discovery sanction should not be subject to the same rules as those entered as a result of a failure to answer a complaint, the plaintiff relied on federal cases upholding judgments that exceeded the demand of the complaint. (*Greenup*, *supra*, 42 Cal.3d at p. 828.) Our high court rejected this argument, stating, "Plaintiff overlooks a crucial difference between state and federal procedures in default judgments: . . . federal defendants who default are entitled to a minitrial on the sole issue of damages. [Citations.] Unlike the ex parte hearing provided for by section 585 [citation], the hearing in federal court is a full-fledged adversarial contest. [¶] It is here that plaintiff's analogy to federal law . . . breaks down: under section 585 there is no contest whatever once a defendant defaults. [Citation.] We conclude that due process requires notice to defendants, whether they default by inaction or by willful obstruction, of the potential consequences of a refusal to pursue their defense. Such notice enables a defendant to exercise his right to choose—at any point before trial, even after discovery has begun—between (1) giving up his right to defend in exchange for the certainty that he cannot be held liable for more than a known amount, and (2) exercising his right to defend at the cost of exposing himself to greater liability." (*Id.* at pp. 828–829.) Here, of course, Ottovich was entitled to a full-fledged adversarial proceeding on the issue of

---

[6] We also note that this result was exactly what Ottovich asked for in his motion to vacate the judgment. He argued that the default judgment was void, and that "[t]he proper procedure would have been for Judge True to strike Harvey Ottovich's answer, and then for plaintiff to serve a Statement of Damages."

9

damages, thus obviating our Supreme Court's due process concerns where such a trial was not available.

This result is also consistent with the statutory scheme. Section 2023.030, subdivision (d) authorizes a trial court to impose various types of terminating sanctions, including "[a]n order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process" (§ 2023.030, subd. (d)(1)) and "[a]n order rendering a judgment by default against that party" (§ 2023.030, subd. (d)(4)). Thus, the statute does not appear to treat an order striking a party's pleadings as equivalent to a default.

Here, as in *Johnson*, defendant remained able to appear in the action and protect his interests in the trial on damages. In effect, Ottovich was in the same position as he would have been if the trial court had ordered issue sanctions; that is, his liability was established, but he remained able to participate in the proceedings and contest the issue of damages. In these circumstances, we conclude the trial court was not required to reinstate his answer when it vacated the default judgment.[7]

## B. Denial of Motion for Reconsideration

Ottovich also contends the trial court abused its discretion in failing to grant relief under section 473. This argument appears to challenge the denial of his motion for reconsideration of the order granting summary judgment, in which Ottovich argued, inter alia, that his failure to amend his answer was due to his attorney's excusable mistake in believing the answer had automatically been restored when the trial court set aside the default and vacated the default judgment. In support of his motion, Ottovich submitted his counsel's "declaration of fault" stating that after the motion to vacate the judgment was granted, both he and Ottovich had forgotten that no answer to the first amended

---

[7] Ottovich contends in his reply brief that section 2023.030 authorizes a trial court to impose only one terminating sanction, not more than one in the same case. He also argues in his reply brief that the trial court created an "impermissible [c]onditional [t]erminating sanction." We will not consider contentions raised for the first time in a reply brief. (*Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 548.)

10

complaint had been filed, that he believed the trial court had necessarily reinstated Ottovich's answer to the original complaint, and that if he had believed it was necessary to amend the answer on file in order to protect Ottovich from a motion for summary judgment, he would have done so.

In denying the motion for reconsideration, the trial court ruled that reconsideration was not warranted under section 1008, subdivision (a), because Ottovich had not shown either that new or different facts, circumstances, or law existed or that he could not have brought any such circumstances to the court's attention by the exercise of reasonable diligence prior to the initial order granting summary judgment.[8] As explained in *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212, "Section 1008, subdivision (a) requires that a motion for reconsideration be based on new or different facts, circumstances, or law. A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time. [Citation.] A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard." Ottovich makes no attempt to show on appeal that new or different facts or law existed, that he could not have brought any such changes to the court's attention before it ruled on his motion for summary judgment, or that he met the requirements of section 1008 in any other way. Accordingly, he has failed to meet his burden on appeal to show error.

Even if we were to treat Ottovich's motion for reconsideration as a request under section 473 for leave to file an answer, we would reject his contention. Section 473, subdivision (b), provides in pertinent part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . . Notwithstanding any other requirements of this

---

[8] Section 1008, subdivision (a) provides that a party may seek reconsideration of an order "based upon new or different facts, circumstances, or law," and that the party must state by affidavit "what new or different facts, circumstances, or law are claimed to be shown."

11

section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

We are unpersuaded that the trial court abused its discretion in not allowing Ottovich to file a new answer under the first part of this subdivision, which provides for discretionary relief. (See *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 681.)[9] Ottovich argues that the requisite "mistake, inadvertence, surprise, or excusable neglect" can be found in his belief that his answer was automatically reinstated when the trial court vacated the default. He argues that between the time the trial court lifted the default and the time the Department brought its motion for summary judgment, both the trial court and the Department proceeded as if the matter were going to trial, and thus "lulled" him into believing the answer had been implicitly revived; if he had realized that was not the case, he contends, he would have applied earlier to reinstate the answer. However, he has made no attempt to show either that the trial abused its discretion in striking his answer in the first place or that this discovery sanction was imposed as a result of his "mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).) Nor has he shown that his counsel's mistake in failing to seek leave earlier to file a new answer prejudiced him—that is, that the trial court would have lifted that discovery sanction, allowed him to file an answer, and denied the motion for summary judgment if he had made the request earlier—and we see no basis for such a conclusion.

Finally, we reject Ottovich's argument that the interests of justice require the reversal of the judgment because he has a valid defense to the action and because public

---

[9] The second part of this subdivision—providing for mandatory relief from default upon a proper showing—is inapplicable here because the trial court vacated the default it originally entered against Ottovich.

12

policy favors the resolution of disputes on their merits. Our Legislature has authorized trial courts to issue terminating sanctions for discovery abuses (§ 2023.030), and the very nature of such sanctions is that a defendant will be precluded from asserting otherwise legitimate defenses. (See *Johnson, supra,* 28 Cal.App.4th 613, 627, fn. 19 ["an issue sanction can implicitly preclude a defendant from presenting an otherwise perfectly legitimate defense that is inextricably intertwined with the issue which the defendant is prohibited from contesting."].)

### III. DISPOSITION

The judgment is affirmed.

_____
Rivera, J.

We concur:

_____
Ruvolo, P.J.

_____
Reardon, J.

Trial court:              Alameda County

Trial judge:             Hon. John M. True, III

Attorneys:

Harvey Ottovich for Defendant and Appellant

Law Offices of Randall B. Schmidt, Randall B. Schmidt for Defendant and Appellant

Kamala D. Harris, Attorney General of California, Angela Sierra, Senior Assistant Attorney General, Antoinette Benita Cordero, Deputy Attorney General, John M. Appelbaum, Deputy Attorney General, and Department of Fair Housing and Employment, Megan Elizabeth Elsea, for Plaintiff and Respondent